## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| DYLAN KOENIG,<br>an adult individual resident of Richmond,<br>County of Sagadahoc, and<br>State of Maine,<br><br>    Plaintiff,<br><br>    v.<br><br>MORONG BROTHERS VOLKSWAGEN,<br>a corporation registered to do business in<br>the State of Maine with a place of business<br>in Falmouth, County of Cumberland,<br>and State of Maine, and<br><br>HORACE PARKER SOWLES, an adult<br>Individual resident of Falmouth, County of<br>Cumberland and State of Maine,<br><br>    Defendants. | **JURY TRIAL REQUESTED AND**<br>**INJUNCTIVE RELIEF SOUGHT**<br><br>CASE NO. |

## **COMPLAINT**

Dylan Koenig (hereinafter "Dylan" or "Plaintiff") makes the following complaint against Morong Brothers Volkswagen, which does business as Morong Falmouth (hereinafter, "Morong") and Horace Parker Sowles, (hereinafter "Parker" and collectively, "Defendants"). As set forth herein, Dylan was a longtime, experienced employee of Morong's whose wife was diagnosed with brain cancer in February, 2022. Dylan's wife's disability and his increased familial obligations were well known by Morong and his supervisor, Parker, as Dylan updated his employer consistently through the year.

Despite knowing that Dylan needed to be at home intermittently and unpredictably to take care of his wife and children after her reoccurring seizures, Morong never offered Dylan FMLA or its Maine analogue, even though he was a qualified employee, and his absences would have been covered. Instead, Morong let Dylan struggle and worry about losing his job because

of his health-related absences in 2022, which caused his own mental health to deteriorate. If Morong had offered Dylan FMLA/Maine FML in February, 2022, when the company and Parker knew Dylan was taking leave for a FMLA-qualifying reason, he could have taken job-protected leave intermittently and had his absences legally-protected through the date of his illegal termination.

Nevertheless, Dylan hung on and performed well and was valued enough that Morong offered him a 4 day a week, 40-hour position just the week before he was terminated, so he could have a day to schedule his wife's medical appointments and attend to his own health needs. However, when Dylan's wife had an unscheduled seizure the following week—as all seizures are—Parker, acting on behalf of his family's business for which he is a Director, fired Dylan because he had to be out of work because of his family's needs.

Morong's treatment of Dylan is a paradigmatic case of disability discrimination, discrimination by association, familial obligation discrimination and retaliation for engaging in protected conduct. Morong's and Parker's misrepresentations and failures with respect to Dylan's need for and entitlement of FMLA/Maine FML are clear and unequivocal and punishable by law.

This Complaint follows.

## Parties

1. Dylan Koenig is a citizen of Richmond, Sagadahoc County, Maine.

2. Morong Brothers Volkswagen is a duly-organized Maine company doing business as Morong Falmouth in Falmouth, Cumberland County, Maine. Morong is an employer as defined by the FMLA and Maine Family Medical Leave law.

3. Morong has had more than 70 employees for each working day in each of 20 or more calendar weeks in the same calendar year as, or in the calendar year prior to, when the discrimination alleged in this case occurred.

4. Horace Parker Sowles is an adult resident of Falmouth, County of Cumberland, Maine. Parker is a member of the third generation of the Sowles family who has owned and operated Morong Falmouth since 1954. On information and belief, Parker's title is Fixed Operations Director at Morong, and he oversees the general day-to-day operations of the company. On information and belief, he is also a partial owner of Morong.

5. Parker was Dylan's employer at all times relevant to the Complaint as he was acting within the scope of his employment at Morong when he failed to notify Dylan of his entitlement to take job-protected leave under the FMLA and Maine FML upon learning of Dylan's wife's serious illness, discussed Dylan's attendance and need for leave with him on several occasions in 2022, misled Dylan as to what such job-protected leave entailed and made the decision to terminate Dylan because of his need for job-protected medical leave.

## Jurisdiction and Venue

6. This is a proceeding for declaratory and injunctive relief and monetary damages to redress the deprivation of rights secured to Plaintiff by the Americans with Disabilities Act ("ADA") and the Americans with Disabilities Act Amendments Act ("ADAAA"), 42 U.S.C. § 12101 *et seq.*, the Maine Human Rights Act ("MHRA"), 5 M.R.S. § 4551 *et seq.,* the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2611 *et seq.,* and the Maine Family Medical Leave law ("MFML"), 26 M.R.S. § 843 *et seq*.

7. On or about November 2, 2022, Plaintiff filed a complaint of discrimination with the Maine Human Rights Commission ("MHRC") against Morong.

8. More than 180 days having passed, the Commission issued a right to sue letter on June 21, 2023, pursuant to 5 M.R.S. § 4612 and § 4622.

9. On or about November 2, 2022, the Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). The charge of discrimination was timely filed and included the discrimination complained of in this Complaint against Morong.

10. June 21, 2023, the EEOC issued the Plaintiff a Notice of Right to Sue (the "Notice"), certifying that the EEOC was terminating its processing of the charge, and that the Plaintiff could file a civil action against Defendants within 90 days from receipt of the Notice.

11. The Plaintiff received a copy of the Notice on or about June 27, 2022, and the Plaintiff has timely instituted this action.

12. Plaintiff has exhausted his administrative remedies as to Morong under the MHRA and ADA.

13. This court has jurisdiction of the federal claims asserted here pursuant to §§ 1331 and 1343 of Title 28 (28 U.S.C. §§ 1331, 1343). This court has supplemental jurisdiction over the claims in this action arising under the law of the State of Maine pursuant to 28 U.S.C. § 1367.

14. Venue is proper in this district under 28 U.S.C. § 1391(b)(1), in that Dylan resides in this district and Defendant Morong has a principal place of business in this district, and a substantial part of the events or omissions giving rise to the claim occurred in this district. In addition, the employment records relevant to this matter and most of the witnesses are maintained and located within Cumberland County, Maine.

## Jury Demand

15. Plaintiff demands trial by jury of all claims to the extent allowed by law.

**Factual Background**

16. In August of 2015, Dylan started working for Morong as a Service Advisor. His direct boss was Mark Dinallo, but he also often communicated directly with Parker and Matt Sowles, who own and operate the company.

17. On or about January 30th or 31st, 2022, Dylan's wife had a seizure that resulted in her being taken by ambulance to Maine General. They discovered on January 31, 2022, that she had a mass in her brain that was causing the seizure.

18. On or about February 3, 2022, Dylan's wife had to have serious brain surgery, and they discovered that she had Gliomas, which is a form of brain cancer. Further testing revealed it was a Grade 3 Anaplastic Astrocytoma.

19. Over the course of 2022, Dylan also developed his own mental and physical limitations. The stress of becoming the primary care provider for his family caused a lot of stress, which caused depression and anxiety for which he needed medication.

20. Dylan was out of work for about 2.5 weeks in total after his wife had her first seizure, during this time he was in touch with Morong. Morong knew what his wife was going through with her health challenges.

21. No one at Morong ever told Dylan that he could use FMLA or Maine FML for these absences or had a conversation with him about FMLA/Maine FML until September, 2022, even though Parker and Morong knew he needed leave to care for his wife's serious medical condition and his own serious health conditions.

22. Starting in March, 2022, Dylan's wife started going through radiation treatments every day for six weeks. On Thursday's radiation treatments, he would sometimes go with her to treatments because she needed someone to drive her and so that he could support her and talk with the doctor about her treatment. If he went, he missed about 3 hours of work in the morning.

If Dylan went to his wife's treatment, he texted his boss in advance. He rarely responded but if he did, he says 'k'. No one said this was a problem and still no one talked to him about FMLA/Maine FML leave to attend these appointments.

23.     In May, 2022, Dylan's wife started chemotherapy treatments, which went poorly, resulting in additional medical appointments for her. Dylan had to miss about 4 days from work in May to take care of her, but again no one talked to him about FMLA/Maine FML. Dylan still got all his work done and performed well.

24.     Morong knew that Dylan was out taking care of his wife due to her brain cancer. Matt Sowles, Parker Sowles and Mark Dinallo all knew, as well as Parker's and Matt's dads, who owned the dealership before them. The former owners asked him how his wife was doing.

25.     On or about June 18, 2022, Dylan's wife was approved to go on SSDI effective retroactively back to March, 2022, for her brain cancer and the resulting symptoms. Dylan let Parker Sowles know about his wife's disability approval.

26.     From May through early September, 2022, Dylan's wife had approximately one seizure a month. When this happened, it was unpredictable, but Dylan had to leave work to care for his wife and his children for approximately 2-3 days each time between hospitalizations and follow up appointments. Dylan continued to get his work done and was available when he was not in the office.

27.     Throughout the summer of 2022, Defendants failed to notify him of his eligibility for FMLA/Maine FML. The stress of taking care of his family and working wore Dylan down, and he also ended up needing to take time for his own serious medical issues.

28.     On September 9, 2022, Parker brought Dylan into Parker's office and essentially told him that Dylan couldn't keep missing time off of work even though Parker knew it was because Dylan was taking care of his disabled wife. During this meeting for the first time Parker

brought up FMLA leave, which Dylan didn't know anything about. Parker misled Dylan to believe he would have to stop working entirely to take FMLA—meaning that intermittent leave was not an option. Parker never notified Dylan that Maine FML existed or that Dylan was eligible. In this meeting, Dylan said he wanted to know more about Morong's FMLA policy and asked for details in writing about his options. Morong never followed up with any information about FMLA.

29. On September 16, 2022, Dylan requested via email an accommodation of a reduced schedule from Parker for his own mental and physical health, as well as because of his family's situation. Dylan asked for a four day a week schedule so he could have a day off to take his wife to appointments and also to care for his own mental health. Dylan asked for Defendants to discuss this request further with him so they could figure something out that would work for Dylan, his family and Morong.

30. Later on September 16, 2022, Dylan had a meeting with Mark Dinallo and Parker from about 4:50pm until about 5:45pm to discuss the accommodation email Dylan sent. They ended up offering Dylan a different position to help accommodate Dylan. Parker made sure Dylan understood it would be a pay cut, but it would be a 4 day, 40 hour week. Dylan agreed to the new position in the meeting. Parker said Dylan could start this new role on October 1st, and they shook on it. Parker said he had to talk it over with ownership (Peter Sowles, Matt Sowles, Bill Sowles) and get back with confirmation of the position and details, which he would do the following week on September 23rd.

31. Dylan's wife had a seizure in the afternoon of September, 21, 2022, while Dylan was at work. Dylan texted Parker about the incident and that Dylan was headed to the hospital. Parker responded and indicated it was fine. Dylan was out on September 22nd and 23rd to care for his wife and recover from caring for her.

7

32. On September 23, 2022, Parker texted Dylan to call him, which he did around noon. Parker claimed to not know why Dylan was out of work, when he actually did. Parker said Dylan put him in a tough position because Parker had told Dylan the previous week that they needed him to not miss work anymore. Dylan explained again about his wife's seizure that week (which Parker already knew) and that Dylan wasn't choosing not to come in and can't control when seizures occur. Parker didn't care and just explained that Dylan's family's needs were not what Morong needed right now, so Parker fired Dylan

33. Parker then documented his action and motivation right after the call with Dylan in an email with the Subject line "Dylan Koenig." In this email, Parker states that Dylan has been fired and admits that Dylan's family's needs and absences (which were due to FMLA/Maine FML qualifying reasons) were the reason Parker fired him.

34. If Defendants had notified Dylan that he was eligible for FMLA and Maine FML back in February, 2022, Dylan would still have had job-protected leave when he was terminated by Parker.

35. On information and belief, Morong has granted other employees FMLA for their own medical issues, but not if they have to care for a disabled family member.

### COUNT I:
### Disability Discrimination under the ADA and ADAAA, 42 U.S.C. § 12112
*Against Morong*

36. The Plaintiff incorporates and realleges paragraphs 1 through 35 of this Complaint as if fully set forth here.

37. Plaintiff was and is a qualified person with a disability as defined by the ADA, 42 U.S.C. § 12102(1)(B) and (C), because he was regarded as having a disability, had a record of a disability and has a disability.

38. Plaintiff was and is qualified for his position as Service Advisor, since he satisfies the skill, experience, and other job-related requirements for the position, and since he was and is able to perform the actual essential functions of the position with or without reasonable accommodation.

39. Morong knew of Plaintiff's disability and his request for additional leave and failed to reasonably accommodate Plaintiff and discriminated against Plaintiff as set forth herein.

40. Morong, through its duly authorized agents and employees, who acted on behalf of Morong within the scope of their employment, intentionally discriminated against the Plaintiff based on his disability and based on the exercise of his rights protected by the ADA and ADAAA by discharging the Plaintiff from his employment based on his disability and use of protected leave.

41. Direct evidence establishes that Plaintiff's termination was motivated by discriminatory animus.

42. Morong has proffered various conflicting reasons for terminating the Plaintiff's employment, which are mere pretext for the real reason, namely, the intentional discrimination by Morong against the Plaintiff based on disability and for use of protected leave.

43. Morong acted with malice or with deliberate conduct or in such a manner that, although motivated by something other than ill will toward any particular party, is so outrageous that malice toward Plaintiff can be implied.

44. As a direct and proximate result of the intentional discriminatory acts and practices of Defendant, its agents and employees, including the discriminatory discharge of the Plaintiff's employment, the Plaintiff has suffered and continues to suffer injury, including past and future loss of income and other employment benefits, severe emotional pain and suffering, mental anguish, humiliation, loss of enjoyment of life, costs associated with obtaining

reemployment, embarrassment, damage to his reputation, and other past and future pecuniary losses.

## COUNT II:
## Disability Discrimination under the MHRA, 5 M.R.S. § 4571
### *Against Morong*

45. The Plaintiff incorporates and realleges paragraphs 1 through 44 of this Complaint as if fully set forth here.

46. Plaintiff is and was at all times pertinent to this action covered by the provision of the MHRA, 5 M.R.S. § 4571.

47. Plaintiff is, and was at all times pertinent to this action, covered by the provisions of the MHRA, 5 M.R.S. § 4553-A(1)(C) and (D) because he was disabled, regarded as having a disability and had a record of a disability.

48. Plaintiff was and is qualified for his position as Service Advisor, since he satisfies the skill, experience, and other job-related requirements for the position, and since he was and is able to perform the actual essential functions of the position with or without reasonable accommodation.

49. Morong knew of Plaintiff's disability and his request for leave and failed to reasonably accommodate Plaintiff and discriminated against him because he was disabled as set forth herein.

50. Morong, through its duly authorized agents and employees, who acted on behalf of Defendant within the scope of their employment, intentionally discriminated against the Plaintiff based on his disability and based on the exercise of his rights protected by the MHRA by discharging the Plaintiff from his employment based on his disability and use of protected leave.

51. Direct evidence establishes that Plaintiff's termination was motivated by discriminatory animus.

52. Morong has proffered various conflicting reasons for terminating the Plaintiff's employment, which are mere pretext for the real reason, namely, the intentional discrimination by Morong against the Plaintiff based on disability and for use of protected leave.

53. Defendant acted with malice or with deliberate conduct or in such a manner that, although motivated by something other than ill will toward any particular party, is so outrageous that malice toward Plaintiff can be implied.

54. As a direct and proximate result of the intentional discriminatory acts and practices of Defendant, its agents and employees, including the discriminatory discharge of the Plaintiff's employment, the Plaintiff has suffered and continues to suffer injury, including past and future loss of income and other employment benefits, severe emotional pain and suffering, mental anguish, humiliation, loss of enjoyment of life, costs associated with obtaining reemployment, embarrassment, damage to his reputation, and other past and future pecuniary losses.

55. Defendant discriminated against Plaintiff in violation of the Maine Human Rights Act, 5 M.R.S.A. § 4571 et seq.

## COUNT III:
## Retaliation under the ADA and ADAAA for Requesting a Reasonable Accommodation
### *Against Morong*

56. The Plaintiff incorporates and realleges paragraphs 1 through 55 of this Complaint as if fully set forth here.

57. Plaintiff engaged in the statutorily-protected activity of taking medical leave and requesting an accommodation of leave and was terminated because of engaging in this statutorily-protected activity.

58. Due to the temporal proximity of Plaintiff requesting an accommodation and his termination, one can infer the causal link between the protected activity and the adverse action.

59. Morong acted with malice or with deliberate conduct or in such a manner that, although motivated by something other than ill will toward any particular party, is so outrageous that malice toward Plaintiff can be implied.

## COUNT IV:
## Retaliation under the MHRA, 5 M.R.S. § 4633, for Requesting a Reasonable Accommodation
### *Against Morong*

60. The Plaintiff incorporates and realleges paragraphs 1 through 59 of this Complaint as if fully set forth here.

61. Plaintiff engaged in the statutorily-protected activity of taking medical leave and requesting an accommodation of leave and was terminated because of engaging in this statutorily-protected activity.

62. Due to the temporal proximity of Plaintiff requesting an accommodation and his termination, one can infer the causal link between the protected activity and the adverse action.

63. Defendant acted with malice or with deliberate conduct or in such a manner that, although motivated by something other than ill will toward any particular party, is so outrageous that malice toward Plaintiff can be implied.

## COUNT V:
## Familial Discrimination under the MHRA, 5 M.R.S §4572(1)
### *Against Morong*

64. The Plaintiff incorporates and realleges paragraphs 1 through 63 of this Complaint as if fully set forth here.

65. Plaintiff is and was at all times pertinent to this action covered by the provision of the MHRA, 5 M.R.S. § 4571.

66. Plaintiff was and is qualified for his position as Service Advisor, since he satisfies the skill, experience, and other job-related requirements for the position, and since he was and is able to perform the actual essential functions of the position with or without reasonable accommodation.

67. Morong knew of Plaintiff's familial obligations arising from his wife's ill health in 2022 and Plaintiff's attendant need to care for his children.

68. Morong, through its duly authorized agents and employees, who acted on behalf of Defendant within the scope of their employment, intentionally discriminated against the Plaintiff based on his familial obligations by discharging the Plaintiff from his employment.

69. Direct evidence establishes that Plaintiff's familial obligations were a substantial motivating factor in his termination.

70. Morong has proffered various conflicting reasons for terminating the Plaintiff's employment, which are mere pretext for the real reason, namely, the intentional discrimination by Morong against the Plaintiff based on his familial obligations.

71. Defendant acted with malice or with deliberate conduct or in such a manner that, although motivated by something other than ill will toward any particular party, is so outrageous that malice toward Plaintiff can be implied.

72. As a direct and proximate result of the intentional discriminatory acts and practices of Defendant, its agents and employees, including the discriminatory discharge of the Plaintiff's employment, the Plaintiff has suffered and continues to suffer injury, including past and future loss of income and other employment benefits, severe emotional pain and suffering, mental anguish, humiliation, loss of enjoyment of life, costs associated with obtaining reemployment, embarrassment, damage to his reputation, and other past and future pecuniary losses.

**COUNT VI:**
**Discrimination Based on Association with a Disabled Person, 5 M.R.S. §§ 4621, 4572**
**Against *Morong***

73. The Plaintiff incorporates and realleges paragraphs 1 through 72 of this Complaint as if fully set forth here.

74. Plaintiff is and was at all times pertinent to this action covered by the provision of the MHRA, 5 M.R.S. § 4571.

75. Plaintiff is an "aggrieved person" under the Maine Human Rights Act, 5 M.R.S. § 4553(1-D) because he was subject to unlawful discrimination on the basis of his known relationship with his wife, a disabled person.

76. Plaintiff was and is qualified for his position as Service Advisor, since he satisfies the skill, experience, and other job-related requirements for the position, and since he was and is able to perform the actual essential functions of the position with or without reasonable accommodation.

77. Morong knew of Plaintiff's wife's disability.

78. Morong, through its duly authorized agents and employees, who acted on behalf of Defendant within the scope of their employment, intentionally discriminated against the Plaintiff based on his association with his disabled wife and used his wife's disability as a determining factor in his termination.

79. Morong also created a hostile work environment for Plaintiff arising from a discriminatory motivation against his association with his wife by, inter alia, holding Plaintiff to a different and impossible standard for absences that other employees were not held to, namely not having unplanned medical absences despite knowing that the nature of Plaintiff's obligations were such that his wife's seizures could not be preplanned—which was also contrary to Morong's absence policy in its handbook. Other employees who needed to be out for their own

illnesses (flu, colds, COVID-19, etc.) were not held to the same impossible standard. Plaintiff's "attitude" was also questioned and impugned by Morong's with the assumption that it was due to his caregiving obligations and not, for example, the stress on Plaintiff due to the company's failure to offer him job-protected leave. Plaintiff's so-called and subjectively-assessed 'attitude' was assessed more heavily than his actual performance compared with service advisors who did not have a wife battling brain cancer.

## COUNT VII:
## Interference with FMLA Rights, 29 U.S.C. 2615(a)(1)
### *Against Defendants*

80. The Plaintiff incorporates and realleges paragraphs 1 through 79 of this Complaint as if fully set forth here.

81. Plaintiff was an FMLA-eligible employee because he was employed by Morong for more than twelve (12) months and worked at least 1250 hours in the twelve-month period prior to his request for leave. Morong had 50 or more employees within a 75 mile radius at all times relevant to the Complaint.

82. At all relevant times in this Complaint, Plaintiff's leave from work was for a qualifying reason within the meaning of FMLA. Plaintiff needed FMLA leave to care for his wife, who has a serious health condition, and because he suffered from a serious health condition requiring continuous treatment.

83. Defendants knew or should have known that Plaintiff's need for leave was for an FMLA qualifying reason because Dylan talked with numerous people at Morong and Parker many times about his wife's health condition and that he was struggling with his own health condition.

84. Defendants failed to inform Plaintiff of his rights under the FMLA as required by the law. *See* 29 C.F.R. § 825.300(b)(1).

85. Plaintiff was never given notice of his FMLA rights in accordance with the designation notice requirements of 29 C.F.R. § 825.300(d), or the individualized expectation and obligation requirements under 29 C.F.R. § 825.300(c).

86. Defendants failed to notify Plaintiff that he was or was not qualified for FMLA.

87. Defendants effectively discouraged Dylan from taking FMLA by misrepresenting what leave was available under FMLA.

88. Plaintiff was prejudiced by Defendants' failure to provide him with proper notice in accordance with 29 C.F.R. § 825.300(e) because he was not able to take job-protected leave and worried about his job not being protected when he had to be out for his and his wife's medical reasons.

89. As set forth herein, Defendants engaged in prohibited conduct under the FMLA by interfering with, restraining or denying Plaintiff's rights provided under the Act.

90. Defendants' actions foreclosed Plaintiff's rights under the FMLA, including the right to take intermittent leave for the benefit and need of himself and his family.

91. Defendants considered Plaintiff's FMLA-qualified absences as a factor in his termination.

92. As a direct and proximate result of Defendants' wrongful acts and omissions, Plaintiff has suffered and continues to suffer substantial losses, including past and future lost wages and benefits. Plaintiff is also entitled to liquidated damages and attorneys' fees and costs, and other damages as recoverable by law.

## COUNT VIII:
## Interference with Maine Family Medical Leave Act Rights, 26 M.R.S § 847(1)
*Against Defendants*

93. The Plaintiff incorporates and realleges paragraphs 1 through 92 of this Complaint as if fully set forth here.

94. Morong was subject to the Maine FML. It had 15 or more employees at one location in Maine.

95. At all times relevant to this Complaint, Plaintiff was eligible for leave under the Maine FML because he had worked for more than a year at Morong.

96. At all relevant times in this Complaint, Plaintiff's leave from work was for a qualifying reason within the meaning of Maine FML. Plaintiff needed Maine FML leave to care for his wife, who has a serious health condition, and because he suffered from a serious health condition requiring continuous treatment.

97. Defendants knew or should have known that Plaintiff's need for leave was for a Maine FML qualifying reason because Dylan talked with numerous people at Morong and Parker many times about his wife's health condition and that he was struggling with his own health condition.

98. Defendants failed to inform Plaintiff of his rights under the Maine FML as required by the law.

99. Plaintiff was never given notice of his Maine FML rights in accordance with the designation notice requirements of 29 C.F.R. § 825.300(d), or the individualized expectation and obligation requirements under 29 C.F.R. § 825.300(c), which are incorporated in Maine's law.

100. Defendants failed to notify Plaintiff that he was or was not qualified for Maine FML.

101. Defendants effectively discouraged Dylan from taking Maine FML by never telling him about it at all.

102. Plaintiff was prejudiced by Defendants' failure to provide him with proper notice in accordance because he was not able to take job-protected leave and worried about his job not being protected when he had to be out for his and his wife's medical reasons.

103. As set forth herein, Defendants engaged in prohibited conduct under the Maine FML by interfering with, restraining or denying Plaintiff's rights provided under the law.

104. Defendants' actions foreclosed Plaintiff's rights under the Maine FML, including the right to take intermittent leave for the benefit and need of himself and his family.

105. Defendants considered Plaintiff's Maine FML-qualified absences as a factor in his termination.

106. As a direct and proximate result of Defendants' wrongful acts and omissions, Plaintiff has suffered and continues to suffer substantial losses, including past and future lost wages and benefits. Plaintiff is also entitled to liquidated damages and attorneys' fees and costs, and other damages as recoverable by law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court enter an Order providing as follows:

A. Enter judgment declaring that the Defendants' practices complained of herein are unlawful as alleged;

B. Order Defendants to make Plaintiff whole by providing reinstatement and/or front pay, appropriate back pay, and reimbursement for health, medical and other benefits in amounts to be shown at trial;

C. Order Defendants to pay Plaintiff compensatory damages for non-pecuniary losses, including, but not limited to, severe emotional pain and suffering, mental anguish, humiliation, loss of enjoyment of life, costs associated with obtaining reemployment, embarrassment, and damage to his reputation;

D. Order Defendants to pay Plaintiff punitive damages;

    E.    Order Defendants to pay Plaintiff liquidated damages of $100 per day under the Maine Family Medical Leave Act, 26 M.R.S. § 848(1)(B), plus an additional amount for liquidated damages under 26 M.R.S. § 848(2) because the violation was willful;

    F.    Order Defendants to pay Plaintiff liquidated damages under the Family Medical Leave Act, 29 U.S.C. § 2617(a)(1)(A)(iii);

    G.    Order Defendants to pay litigation costs and expert witness fees;

    H.    Order Defendants to pay Plaintiff nominal damages;

    I.    Order Defendants to pay pre-judgment, post-judgment interest, and reasonable attorneys' fees to Plaintiff; and

    J.    Grant such additional relief as this Court deems appropriate.

/s/ Amy Dieterich, Esq.
Amy Dieterich, Esq.
*Attorney for Plaintiff Dylan Koenig*
SKELTON TAINTOR & ABBOTT
500 Canal Street
Lewiston, ME 04240
(207) 784-3200
adieterich@sta-law.com

Date: July 27, 2023